# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | |
|---|---|
| Dana Peeples, ) | C/A. No. 9:20-4463-RMG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| Herrnstein Auto Group, LLC; William A. ) | |
| Herrnstein, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Before the Court is Defendants' motion to exclude the opinions of Michael D. Freeman (Dkt. No. 47). For the reasons set forth below, the Court grants Defendants' motion.

## I.  Background

In this personal injury lawsuit, Plaintiff alleges she was injured after an automobile driven by Defendant William Herrnstein collided with an automobile driven by Plaintiff.

Defendants move to exclude the testimony of Plaintiff's purported expert Michael D. Freeman. (Dkt. Nos. 47, 63). Plaintiff opposes. (Dkt. No. 59).

Defendants' motion is fully briefed and ripe for disposition.

## II.  Legal Standard

Under Fed. R. Evid. 702, the Court acts as a gatekeeper "to verify that expert testimony is based on sufficient facts or data." *E.E.O.C. v. Freeman*, 778 F.3d 463, 472 (4th Cir. 2015). The expert testimony must be shown to be "not only relevant, but reliable." *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 589 (1993). "Because expert witnesses have the potential to be both powerful and quite misleading, it is crucial that the district court conduct a careful analysis into

the reliability of the expert's proposed opinions." *United States v. Fultz*, 591 Fed. Appx. 226, 227 (4th Cir. 2015).

The trial court must ensure that (1) "the testimony is the product of reliable principles and methods," (2) the "expert has reliably applied the principles and methods to the facts of the case," and (3) the "testimony is based on sufficient facts and data." Fed. R. Evid. 702(b), (c), (d). "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid," *Daubert*, 509 U.S. at 592-93, and whether the expert has "faithfully appl[ied] the methodology to the facts." *Roche v. Lincoln Prop. Co.*, 175 Fed. Appx. 592, 602 (4th Cir. 2006). Additionally, the Court must evaluate any proposed expert testimony under the standards of Fed. R. Evid. 403 to determine whether the probative value of the evidence, if relevant, is substantially outweighed by the risk of misleading or confusing the jury.

Factors to be considered in assessing the reliability of technical or scientific evidence include "whether a theory or technique ... can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," the "known or potential rate of error," the "existence and maintenance of standards controlling the technique's operations," and whether the theory or technique has garnered "general acceptance." *Daubert*, 509 U.S. at 593–94. The *Daubert* factors are not exhaustive and illustrate the type of factors "that will bear on the inquiry." *United States v. Hassan*, 742 F.3d 104, 130 (4th Cir. 2014). Courts have also considered whether the "expert developed his opinions expressly for the purposes of testifying or through research conducted independent of litigation." *Wehling v. Sandoz Pharm. Corp.*, 162 F.3d 1158 at *3 (4th Cir. 1998); *Daubert v. Merrell Dow Pharm. Inc.*, 113 F.3d 1311, 1317 (9th Cir. 1995) (on remand).

The proponent of the expert testimony carries the burden to establish the admissibility of the testimony by a preponderance of the evidence. *Cooper v. Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001). The Fourth Circuit has held that Rule 702 excludes expert testimony on matters within the common knowledge of jurors. *Persinger v. Norfolk & W. R. Co.*, 920 F.2d 1185, 1188 (4th Cir. 1990); Rule 702 (requiring that an admissible expert opinion be based upon "scientific, technical, or other specialized knowledge"); *Scott v. Sears, Roebuck, & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986) (noting by negative implication that "Rule 702 makes inadmissible expert testimony as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance."). The admission of "common sense" expert testimony is dangerous because "the evaluation of the commonplace by an expert witness might supplant a jury's independent exercise of common sense." *Id.*

### III.  Discussion

Defendants move to exclude Freeman's report and testimony for four reasons: (1) he failed to correctly apply his own methodology; (2) as an epidemiologist he is not qualified to testify about specific causation; (3) he is not qualified as an expert in biomechanics; and (4) he has not conducted a proper analysis of the biomechanics of the accident. (Dkt. No. 63 at 1). The Court grants Defendants' motion because Freeman did not reliably apply his methodology.

Freeman describes his methodology as a three-part inquiry:

(1) Whether the injury mechanism had the potential to cause the injury in question (aka general causation);

(2) The degree of temporal proximity between the injury mechanism and the onset of the symptoms reasonably indicating the presence of the injury; and

(3) Whether there is a more likely alternative explanation for the occurrence of the symptoms at the same point in time (aka differential etiology).

While Defendants argue that Freeman did not apply his methodology for several reasons, (Dkt. No. 47-1 at 9-13), the Court focuses on the application of the third step—differential diagnosis—as Freeman's application of that step critically undermines the reliability of his opinion.

The Fourth Circuit has described different diagnosis as follows:

> Differential diagnosis, or differential etiology, is a standard scientific technique of identifying the cause of a medical problem by eliminating the likely causes until the most probable one is isolated. A reliable differential diagnosis typically, though not invariably, is performed after "physical examinations, the taking of medical histories, and the review of clinical tests, including laboratory tests," and generally is accomplished by determining the possible causes for the patient's symptoms and then eliminating each of these potential causes until reaching one that cannot be ruled out or determining which of those that cannot be excluded is the most likely.

*Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 262 (4th Cir. 1999) (citations omitted). A reliable differential diagnosis depends on two steps. "The first step in the diagnostic process is to compile a comprehensive list of hypotheses that might explain the set of salient clinical findings under consideration." *Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1057 (9th Cir.), *as amended on denial of reh'g* (Sept. 25, 2003). "[E]xpert testimony that neglects to consider a hypothesis that might explain the clinical findings under consideration may . . . be unreliable." *Id.* at 1058. The second step requires the expert "to engage in a process of elimination, eliminating hypotheses on the basis of a continuing examination of the evidence so as to reach a conclusion as to the most likely cause of the findings in that particular case." *Id*. A district court is justified in excluding evidence if an expert "utterly fails ... to offer an explanation for why the proffered alternative cause" was ruled out. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 202 (4th Cir.2001). The expert must provide reasons for rejecting alternative hypotheses "using scientific methods and procedures" and the elimination of those hypotheses must be founded on more than "subjective

beliefs or unsupported speculation." *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir.1994).

Here, Freeman erred at both steps. In the first step, Freeman did not compile a comprehensive list of hypotheses. (Dkt. No. 47-4 at 17-18). Rather, he assumes that the accident at issue was the sole possible cause of Plaintiff's injuries. (*Id.* at 18). But "[i]t is inconceivable that the [accident] would be the sole possible cause of [Plaintiff's] injuries when Freeman's expert report expressly states that physical activity as slight" as "sneezing" could cause "could cause herniation." *Deatherage v. Schindler Elevator Corp.*, No. 3:16-cv-206-MMD-VPC, (Dkt. No. 70 at 11) (excluding Freeman for identical reasons where he opined that activity as slight as a "cough or a stumble" could have caused disk herniation where an elevator abruptly stopped and allegedly injured plaintiff); Freeman Report, (Dkt. No. 47-4 at 16) ("Traumatic disk injuries have been described in the peer-reviewed literature as resulting from low to moderate force events, including minimal or no damage traffic crashes, roller coaster rides, and even more mild forces such as sneezing."); (Dkt. No. 47-1 at 11) (noting Freeman testified at his deposition that "comparison of this crash to activities of daily living is not scientifically-founded" and failed to consider, much less mention, that Plaintiff "testified that she has been treated with a chiropractor prior to this accident" and "participated in manual labor for her husband's construction company," "[b]oth activities [which] would have put force on Plaintiff's body equal to or greater than the subject accident"); *Cooper*, 259 F.3d at 204 (holding that "if an expert utterly fails to consider alternative causes or fails to offer an explanation for why the proffered alternative cause was not the sole cause, a district court is justified in excluding the expert's testimony.").[1]

---

[1] Because this finding is dispositive, the Court does not address Defendants' alternative arguments for excluding Freeman.

### IV.     Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' motion to exclude the testimony of Michael Freeman (Dkt. No. 47).

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel<br>
Richard Mark Gergel<br>
United States District Judge

December 9, 2022
Charleston, South Carolina